In the Matter of the Estate of WILLIAM CROWNER, Deceased.

Surrogate's Court, Monroe County, January 23, 1936.

*Whitbeck & Dye* [*E. C. Whitbeck* of counsel], for the petitioner.

*Milton E. Gibbs*, for the State Tax Commission.

FEELY, S. This testator by his last will gave three legacies to his daughter, Agnes E. Miles, first, a sum certain and some jewelry, given to her outright; then the use of the rest of his estate for her life; and lastly the right to consume so much of the principal as she might require or deem necessary for her comfortable support, if in her opinion the income should not be sufficient therefor. The remainder was given to her issue, or in default thereof, to certain others.

The transfer tax in respect of the legacy to her of the sum certain and the jewelry was paid, under the tax order of September 18,

1895. The appraiser reported that the value of the life use would be computed by the Superintendent of Insurance; and that this legatee being the " daughter of said decedent, there is no tax to be computed at present on said real estate." The tax order aforesaid provided that " The tax on said real property [valued at $24,609], and on said balance of personal property [valued at $60,877.96], cannot now be determined, by reason of the contingent provisions of the will of the decedent in relation to the final disposition thereof."

Following the death of the life tenant on January 23, 1934, a *pro forma* tax order was made July 19, 1935, assessing a tax of $629.81 in respect of the invasion of principal actually made by the life tenant, and also a tax of $979.73 in respect of the remainder. The petitioner, as the administrator with will annexed of testator's estate, paid the tax in respect of the remainder, but alleges that it has not paid the tax in respect of the deceased life tenant's invasion of principal for the reason that there were no funds in its hands as such administrator passing to the deceased life tenant's estate from which said tax could be deducted.

Upon being informed that the State would look to petitioner for the tax in respect of the invasion, the petitioner on October 7, 1935, filed its petition and a notice of motion to the Tax Commission for an order adjudging that neither the petitioner, nor this testator Crowner's estate were liable for the tax in respect of the life tenant's invasion. When the motion was brought on for hearing, it was stipulated in open court that it should be deemed an appeal from the *pro forma* order aforesaid. It also appears that out of an estate of about $95,000, the life tenant must be deemed to have consumed principal to the extent of $62,981.07. A *pro forma* order declaring her individual estate to be non-taxable has been entered. The petitioner, as administrator with will annexed of the testator Crowner, has in its hands as such $22,505.89. The reasons alleged for not paying the tax in respect of the life tenant's invasion is that petitioner, as representative of testator's estate, has never had any of the property of the deceased life tenant in its hands; and that the $22,505.89 belongs to the remaindermen; and that the tax in respect of the invasion by the life tenant cannot be deducted therefrom. This assumes that the tax could not be taken out of the corpus remaining after her invasion had ceased, or before her invasion verged upon becoming a total consumption. How, then, is the tax to be collected, as a practical matter?

Assuming, as we must on this appeal, that a tax became due the State in respect of its transfer to her of all she took under her testamentary right to consume corpus. Until she had made use of that privilege, one could not know how much she would consume.

If the tax were deducted from her proposed invasions, then she could consume just so much more of the principal; and if she decided to consume the whole corpus, as she might, it would not follow that the tax could not first be had out of the corpus, if the tax could not be collected from her for lack of individual assets of her own; for where the invasion was only partial in her lifetime, the remainderman stood to receive then only so much of the corpus as might then be left after several deductions had first been made from it, commissions, administration expenses and her funeral, despite the fact the will did not in so many words authorize this particular deduction (*Matter of Frayer*, 155 Misc. 811), and also the final deduction would be whatever else might properly be considered an incident of her right of invasion. If this tax came out of what corpus she had appropriated to her own use, her right to consume the principal would be diminished by just so much. The liberal construction always accorded to one to whom the right to consume the fund had been given, especially a widow, seems to indicate that the remainderman would have to stand the deduction of this tax in case the legal representative saw fit to allow the widow to use up a considerable fraction of the principal without his deducting from the sums so taken by her enough to meet the tax. In no other way can the widow's preferred right to consume the whole of the corpus be reconciled with the subordinate right of the remainderman to receive whatever, if anything, may be left after her rights in the premises have been fully and liberally satisfied.

Where, however, the invasion threatens to be a total one, either the State stands to lose its tax, or else the legal representative, and not the remainderman, should have to pay the tax; hence, the statute applicable herein has declared that the legal representative of an estate should be personally liable for the tax as well as is the transferee; and also that the tax should remain a lien on the property until paid. (Laws of 1892, chap. 399, § 3; later Tax Law, § 224.) So, a legal representative, when confronted with a proposed invasion of corpus that will consume the entire fund, must, for his own protection, obtain indemnity against his own liability to have to pay the tax, or else deduct from principal enough to meet the tax on the supposition that the whole fund is to be presently consumed.

Back of those comparative aspects of the position of the individual recipients lies the fundamental consideration that whatever was transferred to either or both of them was a transfer projected by the testator and effectuated solely by the power of the State; and it is on this effectuation of the transfer of the property, as a whole, that the toll of this tax is taken. For this reason, and also by reason

of the practical needs of administration and collection as between the State and the executor and the beneficiaries, the State imposes a lien for the whole tax upon the entire fund transferred, especially as regards the executor.   So, it cannot well be said that there were not, or are not now any funds in the hands of the executor of this Crowner estate from which the tax on the life tenant's invasion of principal can be paid or collected.

This motion or appeal is denied on the merits, and the *pro forma* order likewise affirmed.

Enter an order in accord with this decision.