In the Matter of the Estate of FRANKLIN MILES, Deceased.

Surrogate's Court, Monroe County, February 17, 1936.

*Harris, Beach, Folger, Bacon & Keating* [*James G. Dale* of counsel], for the motion.

*Milton E. Gibbs*, for the State Tax Commission.

FEELY, S.  Testator died August 2, 1907; and on February 17, 1908, the tax on the transfer of his estate was partly fixed by order of this court in accord with his last will whereby he gave his widow the use of all his property for her lifetime, with the right to consume as much of the principal as she might see fit. She had become forty-five years of age on July 28, 1895, according to the tax deposition filed in the William Crowner estate.  Her life use at fifty-seven on $131,883.82 was found to be then presently worth $64,087; and a tax of one per cent, imposed by the order aforesaid, was duly paid.

The remainder of the estate, if any, was given by the will to the members of a class of such generally described relatives of testator as might outlive his widow; and the tax order further declared that " The interest of the remainderman has not been taxed at the present time, but the taxation of said interest is held in abeyance until the falling in of the life estate on account of the provision in the testator's will that the life tenant may use as much of the principal as she sees fit."  This reservation in the order used the singular form, " remainderman," whereas the appraiser in his report had used the plural.

At the widow's death on January 23, 1934, the administrator with the will annexed had on hand the sum of $39,727.66.  Originally, this estate had a net value of $131,883.82.  Undoubtedly, a tax can now be collected from the remaindermen as such.  The question is whether there can also be a tax collected now from the estate on the amount of the widow's invasion of corpus — the difference between the two figures last mentioned — $92,056.16.

The administrator c. t. a. brought the matter on in the form of a petition, filed November 4, 1935, and a notice of motion for an order determining the amount of transfer tax presently payable in this estate.  The State opposes the claim that only the remainder, $39,727.66, is now taxable as such.  On stipulation in open court

the issue was submitted as if it were an appeal from a *pro forma* order. Can the transfer of the amount of the invasion be taxed now?

The difficulty is to reconstruct now the transfer tax law and practice of 1908, because the statutes and the practice thereunder have gone through various stages of development, from the Collateral Inheritance Act of 1885 (See *Matter of Cager*, 111 N. Y. 343), up to the plan of ultimate readjustment under the Transfer Tax Law, as amended in 1911, and applied, for example, as in *Matter of Bloss* (100 Misc. 643) and *Matter of Jones* (151 id. 859). The practice of 1908 appears to have been to tax the right to life use at its full value; and reserve the taxation of the remainder to abide the event. Whether this can be construed to indicate an intention, at that stage, to abandon the tax in respect of the invasion is the instant question to be determined.

At that time the statute authorized a bond for deferred payment, and also composition of a tax; and for nine years before (Laws of 1899, chap. 76) section 230 of the Tax Law had provided, with respect to estates upon contingencies for the present collection of tax " at the highest rate " possible, with a right to claim the return of any difference by reason of ultimate exemption or less rate. The possibility of claiming a refund in the end appears not to have been then utilized; and so remained dormant until 1911 when this section 230 was amended (Laws of 1911, chap. 800) by adding the provision as to a " temporary order."

Even then it seems not to have been practically realized that these provisions applied to the case of invasion by a life beneficiary, until Surrogate FOWLER held in 1916, in *Matter of Neher* (95 Misc. 68), that the widow's life estate was presently taxable; and that a tax at the highest rate could be reserved by a temporary order on the value of the principal which the widow also had the right to consume. In 1917 Surrogate OSTRANDER observed in *Matter of Bloss* (*supra*), that section 230 was apparently in conflict with the provisions of section 222 to the effect that undeterminable future estates should be taxed at the time the persons entitled should come into actual possession but he reluctantly concluded the rule had already become established in 1902 for the " immediate taxing of such transfer." It was rather a matter of assuring payment by reserving, under a temporary order, enough to meet fully the tax incident on the event as it might prove to be in the end. In the interim the taxpayer was given the benefit of any doubt or delay which arose out of the practical difficulty of forecasting and computing the values of the variable and indefinite rights involved in a gift of life use with a power of consuming

corpus. The consumption of corpus would cause income to cease; and the frustrated future income might be argued to be something which could not fairly be taxed. The decisions were not in accord on the taxation of such cases, although the statute (Tax Law, § 230, as amd. by Laws of 1905, chap. 368) then, as now, declared that such estates which were subject to be divested by the act or omission of the legatee should be taxed " as if there were no possibility of such divesting."

There appears to have been some doubt as to corpus by reason, perhaps, of the property aspect being more conspicuous than the transfer of the right to it; for no one could foretell how much of the property would be consumed; and until it had been actually used up, taxing it in advance as having been used did not seem fair; and the amount of the remainder, if any, had to be measured ultimately by the extent of the invasion. For all that, it was still possible for the life beneficiary to confine herself to income for almost all of her life and in the last year dispose of the entire corpus; but as a matter of law, even if she consumed the whole corpus in the first year and thus destroyed future income as such, still the right to income had, under the statute, initial value, and the acceptance of the transfer of a full life use as of the time of its transfer at testator's death was enough, in the theory of the taxation of the transfer by the State, to warrant the State in taking toll of the transfer, regardless of the outcome.

However, in that stage of tax experience, a middle course was directed by the Comptroller to be taken, apparently under section 222 of the Tax Law (as amd. by Laws of 1905, chap. 368), namely, to tax the full value of the life use, and reserve the tax on the remainder for future determination. So, on May 19, 1913, the following opinion was given out by the Comptroller: " In the appraisal of estates where the widow is given a life estate in certain property, with power to use a part or all of the corpus of the fund * * * with remainder to the decedent's son, your practice in appraising the value of the interest of the widow as though it was a life estate only and holding the taxation of the remainder in abeyance until the death of the life tenant, is correct, and I do not believe the amendment to section 230 of the Tax Law, by chapter 800 of the Laws of 1911, providing for the entry of a ' temporary ' order affects the practice in this respect." (2 State Dept. Rep. [1st Series] 503.) On the result of that attitude, Mr. Gleason, a sometime counsel to the State Comptroller, made this comment: " Under this method it is obvious that if the life tenant uses part or all of the principal, part of the estate will escape

taxation, but where the discretion is vested in the trustee to use part or all of the principal no remedy has as yet been discovered." (Gleason & Otis, Inheritance Taxation [4th ed. 1925], p. 501.)

It was while the tax practice was in this stage that the order in question was made. Undoubtedly, the order should be held to have been a conclusive adjudication (*Matter of Bergen,* 157 Misc. 313) in respect to the extent to which the rights transferred to the widow were thereby taxed, namely, her full life use. Counsel for the moving party herein argues that it is conclusive also as to all her rights, without exception.

This order expressly reserves for future taxation, not the " remainder," but the " interest of the remainderman." The moving party argues that this expression must be taken to mean only those persons who might receive the property, if any, which should happen to be left at the death of the life tenant; and it is further argued that the State by entering the order in accord with the then current practice and with the " limited " reservation above quoted, is thereby estopped to proceed now, on a different theory of practice, to tax the transfer of the right to invade. If the invasion be taxable, there is no doubt as to the State's right to collect that tax from the remaindermen, or from the administrator c. t. a. (See *Matter of Crowner,* 158 Misc. 347.) The estate left by this life tenant was found not to be taxable. (Id.)

Counsel for the Tax Commission concedes that the reservation in this order is about as loosely drawn as one might expect with reference to a phase of the subject-matter that was not then receiving intensive attention. At that time the attention centered on the computable life use. He contends, however, that this reservation, for all that, makes clear that taxation of some interest in the premises associated with invasion was meant to be " held in abeyance * * * on account of the provision * * * that the life tenant may use as much of the principal as she sees fit." He argues that this explicit reference to the right to consume corpus would be rendered meaningless if the reservation be limited to the " interest of the remainderman," strictly so called. The appraiser had used the word " remaindermen," which by its plural form was better adapted to include the proprietary interest of the widow in the corpus, as distinct from her usufruct, together with the outright ownership by other persons of any residue.

Invasion and remainder are correlative terms inasmuch as the remainderman stood to get only what the invading life tenant had not consumed out of corpus. If the life tenant consumed all the fund, neither of them, in the theory of the moving party, would have to pay any transfer tax. The reservation contemplated inva-

sion as a possible factor in determining the tax to be paid by the remainderman; and it does not expressly waive taxation of the invasion. It impliedly reserved it for consideration, with the remainder, if any there should be.

The reservation falls short of showing an intention to abandon the taxation of the right to invade. In fact, no reservation was necessary. Had this order purported to tax the transfer with respect to each and every interest then taxable — which it does not purport to do — then the moving party would probably be successful in his claim that the order was and is now all-conclusive (*Matter of Morss*, 85 Misc. 676); but purporting, as this order does, to tax only one interest at that time, which was the only interest then fairly computable, it would not prevent taxation of the remaining interests even if the order did not contain any reservation whatever. (*Matter of Ely*, 157 App. Div. 658.) One seems to be overdrawing the premises by inferring a deliberate intention here to abandon taxing the transfer of rights in the principal according to what they might turn out to be when the period of use had expired. Rather, the plan chosen here seems to have been laid under section 222, instead of under section 230, by reserving the question as to transfer of corpus until the life use had fallen in. If, however, the fact be that the initial idea of handling such corpus transfers just happened to develop in the consciousness of the tax gatherers through various stages from section 222 to section 230, comparable to the growth of a seed into fruitage, this takes off naught from the essential implications of the idea either in this field, or in any other where the fact of personal adaptation has been under observation. The problem put in reserve in 1908 appears clearer now in the light of accumulated experience.

My conclusion is that the counsel for the Tax Commission is correct in maintaining that both the invasion and the remainder stated above are subject to tax in respect to the transfer thereof to the parties respectively; and that both taxes are collectible out of the estate now in hand.

Enter an order in accord with this decision.